**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| LILLIE D. MALGRA, | ) | No. ED CV 06-202-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 3, 2006, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 21, 2006, and March 22, 2006.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 10, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## <u>BACKGROUND</u>

Plaintiff was born on October 6, 1965.  [Administrative Record ("AR") at 73, 118.] She has a tenth grade education.  [AR at 305.]  Her previous work experience includes positions as a dishwasher, server, housekeeper, buffet attendant, prep cook, laborer, kitchen worker, and in-home caregiver.  [AR at 85-92.]

On August 16, 2004, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging disability due to stress, anxiety, depression, weight and walking problems, a back problem, a thyroid problem, asthma, and ulcers.  [AR at 12, 74-77.] She claimed she has been unable to work since December 31, 2003.  [AR at 77-78.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on September 13, 2005, where plaintiff appeared with counsel and testified on her own behalf.  A vocational expert ("VE"), a medical expert, and a third party witness also testified.  [AR at 300-37.]  A supplemental hearing was held on October 14, 2005, where both plaintiff and a medical expert testified.  [AR at 338-57.]  On December 22, 2005, the ALJ found that plaintiff is not disabled because she retains the residual functional capacity[1] to perform sedentary work[2] with certain restrictions.[3]  [AR at 12-19.]  On

---

[1]    Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3]    The ALJ determined that plaintiff can stand for a maximum of twenty minutes at one time, four times a day, and can walk less than 100 feet at one time.  While sitting, plaintiff needs to change positions every 30 to 45 minutes.  She also must be able to lie down during the lunch break.  She cannot bend or stoop, and requires an air-conditioned workplace with no extreme temperatures or air pollutants.  With respect to mental restrictions, plaintiff can perform simple and repetitive two- to three-step tasks, but not fast-paced work.  She needs to work in a nonpublic environment. [AR at 15.]

1    February 7, 2006, the Appeals Council denied plaintiff's request for review, and the ALJ's decision
2    became the final decision of the Commissioner.  [AR at 5-7.]

3

4                                                III.

5                                   **STANDARD OF REVIEW**

6           Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's
7    decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial
8    evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,
9    60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

10          In this context, the term "substantial evidence" means "more than a mere scintilla but less
11   than a preponderance -- it is such relevant evidence that a reasonable mind might accept as
12   adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at
13   1257.  When determining whether substantial evidence exists to support the Commissioner's
14   decision, the Court examines the administrative record as a whole, considering adverse as well
15   as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th
16   Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court
17   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,
18   53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

19

20                                               IV.

21                          **THE EVALUATION OF DISABILITY**

22          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
23   to engage in any substantial gainful activity owing to a physical or mental impairment that is
24   expected to result in death or which has lasted or is expected to last for a continuous period of at
25   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

26   /

27   /

28   /

                                                3

**A.      THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id.  The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2003. [AR at 14.] At step two, the ALJ concluded that plaintiff has the following severe impairments:  post-traumatic stress disorder; substance abuse in remission since 1995;

depressive disorder, not otherwise specified; morbid obesity; hypothyroidism; chronic vaginal bleeding; and neuralgias in the back and shoulder.  [Id.]  The ALJ found at step three that the impairments do not meet or equal any impairments in the Listing.  [Id.]  At step four, the ALJ concluded that plaintiff retains the ability to perform sedentary work with certain restrictions.  The ALJ further found that plaintiff is unable to perform her past relevant work. [AR at 15, 18.]  At step five, the ALJ found that given plaintiff's age, education, work experience, and residual functional capacity, a significant number of jobs exist in the national economy that plaintiff can perform. [AR at 18.]  Thus, the ALJ concluded that plaintiff is not disabled.  [AR at 19.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends the following:  (1) according to the ALJ's functional capacity assessment, plaintiff cannot complete an eight-hour workday; (2) the Commissioner failed to carry the burden at step five of the sequential process of proving that other work within plaintiff's functional capacity exists in the national economy; and (3) the ALJ erred by failing to properly consider the opinions of disability submitted by the treating physician.  See Joint Stipulation ("Joint Stip.") at 2-3.

As explained below, the Court concludes that remand is in order for the ALJ to reconsider whether jobs are available in the national economy that are appropriate for plaintiff's residual functional capacity.

**A.    PLAINTIFF'S MENTAL RFC AND ABILITY TO PERFORM THE JOBS CITED BY THE ALJ**

In the hearing decision, the ALJ concluded that plaintiff cannot follow complex instructions and can perform simple and repetitive two- or three-step tasks.  [AR at 15.]  The ALJ went on to determine that, based on the VE's testimony, the following three jobs are compatible with plaintiff's limitations:  parimutuel-ticket checker (Dictionary of Occupational Titles ("DOT") no. 219.587-010); addresser (DOT no. 209.587-010); and cutter-and-paster, press clippings (DOT no. 249.587-014).[4]

---

[4]    Neither the vocational expert nor the ALJ provided the DOT numbers for these jobs.

1   Under the DOT, the cutter-and-paster and addresser positions have a reasoning level of 2.  The

2   parimutuel-ticket checker position has a reasoning level of 3.

3         Every job description in the DOT contains a General Educational Development ("GED")

4   component.  See DOT Appendix C.  The GED "embraces those aspects of education (formal and

5   informal) which are required of the worker for satisfactory job performance."  See DOT Appendix

6   C.  The GED component is comprised of three elements -- reasoning development, mathematical

7   development, and language development -- which are rated on a six-point scale ranging from level

8   1 (the least difficult) to level 6 (the most difficult or complex).  See id.

9         As the numerical reasoning development scale used by the DOT progresses, the level of

10  detail involved in performing the job increases while the work becomes less routine.  For example,

11  a reasoning level 1 position requires that a worker be able to "[a]pply commonsense

12  understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized

13  situations with occasional or no variables in or from these situations encountered on the job."  See

14  DOT, Appendix C.  Reasoning level 2 requires the worker to "[a]pply commonsense understanding

15  to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving

16  a few concrete variables in or from standardized situations."  See id.  Next, a reasoning level 3

17  position requires the worker to "[a]pply commonsense understanding to carry out instructions

18  furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several

19  concrete variables in or from standardized situations."  See id.

20        Here, plaintiff contends that given her functional capacity for simple work and non-complex

21  instructions, she is unable to perform any of the three jobs assigned to her by the ALJ.  She

22  contends that only jobs with the reasoning level of 1 are appropriate.  See Joint Stip. at 8-10.

23  Plaintiff argues that the VE's testimony regarding her capability of performing the three jobs at

24  issue, and the ALJ's decision involving the same, are inconsistent with the DOT.  See id. at 9-10.

25        "In order for an ALJ to accept vocational expert testimony that contradicts the Dictionary

26  of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'"

27  See Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d

28  1428, 1435 (9th Cir. 1995) (holding that the job description found in the DOT raises a presumption

6

1   as to how the job is performed; the presumption is rebuttable if the record contains persuasive

2   evidence to support a deviation)); see also Terry v. Sullivan, 903 F.2d 1273, 1278 (9th Cir. 1990).

3   In order for "the ALJ to rely on a job description in the Dictionary of Occupational Titles that fails

4   to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."

5   Pinto, 249 F.3d at 847; see also Social Security Regulation ("SSR") 00-4p.[5]

6          After a careful review of plaintiff's claim, the Court concludes that remand is warranted, as

7   it appears that work at the reasoning level of 2 may be inconsistent with plaintiff's mental RFC.

8   Again, reasoning level 1 involves carrying out simple one- or two-step instructions.  Reasoning

9   level 2 involves carrying out "detailed" but "uninvolved" instructions.  It is not clear -- and the ALJ

10  did not discuss -- if jobs with a reasoning level of 2 can be performed by an individual, such as

11  plaintiff, restricted to following only non-complex instructions and carrying out simple tasks.

12  Although the ALJ concludes in the decision that the VE's testimony is consistent with the

13  information contained in the DOT, there is no indication that the ALJ took into account the GED

14  reasoning levels of the cited jobs.[6]

15         The Court observes that some courts faced with similar issues have found that level 2

16  reasoning involves tasks more difficult than simple work, while other courts have held the opposite.

17  See Lucy v. Chater, 113 F.3d 905, 909 (8th Cir.1997) (rejecting argument that a plaintiff limited

18  to following only simple instructions could engage in the full range of sedentary work because

19  many unskilled jobs in that category have reasoning levels of 2 or higher); Mead v. Barnhart, 2004

20  ────────────────

21     [5]   SSR 00-4p provides in relevant part:  "When vocational evidence provided by a VE ... is not
    consistent with information in the DOT, the adjudicator must resolve this conflict before relying on
22  the VE ... evidence to support a determination or decision that the individual is or is not disabled.
    The adjudicator will explain in the determination or decision how he or she resolved the conflict.
23  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was
    identified."  While Social Security Rulings do not have the force of law, they nevertheless "constitute
24  Social Security Administration interpretations of the statute it administers and of its own
    regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
25  Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

26     [6]   At the hearing, the VE noted that the listed jobs each had an "SVP" of 2, but did not
27  mention the corresponding GED reasoning levels.  [See AR at 334-35.]  The term "SVP" refers
    to a job's specific vocational preparation component, which is the amount of time it generally takes
28  to learn the job.  Terry, 903 F.2d at 1276; DOT Appendix C.

1  WL 2580744 (D.N.H. Nov. 15, 2004) (stating that reasoning level 2, or higher, "assumes that the

2  applicant is capable of more than simple or repetitive tasks"); Cooper v. Barnhart, 2004 WL

3  2381515, at *4 (N.D.Okla. Oct.15, 2004) (remanding to have ALJ and VE address issue of

4  whether reasoning level 2 work is more complex than simple and repetitive tasks); Allen v.

5  Barnhart, 2003 WL 2215950, at *10 (N.D.Cal. Aug. 28, 2003) (reasoning level 2 requirements

6  exceed ALJ's limitation to simple, routine tasks); but see Meissl v. Barnhart, 403 F.Supp.2d 981,

7  984 (C.D.Cal. 2005) (reasoning level 2 work appropriate for RFC involving simple tasks); Hackett

8  v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (level 2 reasoning was consistent with RFC

9  involving simple and routine work tasks).

10         As for the ALJ's determination that plaintiff can work as a parimutuel-ticket checker (which

11  involves reasoning level 3), the Court finds that the demands of this reasoning level -- i.e., carrying

12  out instructions "furnished in written, oral, or diagrammatic form" -- appear to involve more

13  sophisticated work than that prescribed for plaintiff by the ALJ. See, e.g., Hackett, 395 F.3d at

14  1176 (level 3 reasoning appeared inconsistent with limitation to simple and routine work tasks);

15  Hall-Grover v. Barnhart, 2004 WL 1529283, at *3 (D.Me. April 30, 2004) ("The plaintiff ... points

16  out, correctly, that the demands of the [reasoning level 3] jobs as described in the DOT are

17  seemingly inconsistent with a limitation to simple repetitive work."); Mead, 2004 WL 2580744, at

18  *2 ("Because the job ... requires GED reasoning at level 3 ..., it appears that the vocational

19  expert's opinion that the job required only simple, repetitive tasks conflicts with the DOT listing.").

20         Because the DOT's reasoning level 2 requirements may conflict with the prescribed

21  limitations involving non-complex instructions and simple and repetitive two- to three-part tasks,

22  and because reasoning level 3 work likewise appears inconsistent with plaintiff's mental RFC, the

23  Court concludes that remand for further proceedings is in order.  The ALJ is directed to consider

24  the GED reasoning levels in assessing whether plaintiff's mental restrictions preclude her from

25  performing jobs at reasoning level 2 or higher, and, if necessary and/or possible, explain any

26  deviation from the DOT.

27  /

28  /

1    **B.     THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT**

2             As mentioned above, the ALJ set forth the following residual functional capacity

3    assessment for plaintiff:  stand for a maximum of twenty minutes at one time, four times a day;

4    walk less than 100 feet at one time; change positions every 30 to 45 minutes while sitting; lie down

5    during the lunch break; no bending or stooping; air-conditioned workplace with no extreme

6    temperatures or air pollutants; simple and repetitive two- to three-step tasks; no fast-paced work;

7    and a nonpublic environment.  [AR at 15.]

8             Plaintiff interprets the above limitations to mean that she cannot complete a full workday.

9    According to plaintiff, "when chronologically graphed, to complete an 8 hour day plaintiff will need

10   to alternate sitting and standing.  If all sitting periods last 40 minutes, plaintiff must be capable of

11   5 standing periods instead of 4 standing periods in order to complete the day.  This violates the

12   ALJ's functional capacity assessment by 20 minutes.  If all sitting periods last 30 minutes, plaintiff

13   must endure seven standing periods, which violates the ALJ's findings by 6[0] minutes.  Plaintiff's

14   extra one to three 20 minute breaks must be spent lying down, because standing is not an option

15   for plaintiff after the first 4 standing periods."  See Joint Stip. at 4.

16            As respondent correctly points out, while plaintiff assumes that the ALJ's RFC requires her

17   to stand for twenty minutes each time she has to change positions while sitting, the plain meaning

18   of the RFC does not compel such an interpretation.  See Joint Stip. at 5.  The ALJ explained in

19   the hypothetical posed to the vocational expert that plaintiff can sit in one position for thirty to forty-

20   five minute intervals, but "[c]an sit longer after chang[ing] positions in a seated position."  [AR at

21   333.]  Thus, contrary to plaintiff's understanding, she is not required to stand for twenty minutes

22   every time she shifts positions while sitting.  Rather, after she momentarily shifts her position, she

23   can continue sitting for, presumably, up to another thirty or forty-five minutes before shifting

24   positions again.  At the same time, she is capable also of standing for a total of 80 minutes per

25   workday, for no more than 20 minutes at a time.  The ALJ's RFC assessment does not preclude

26   plaintiff from completing a normal workday.  Remand on this issue is not warranted.

27   /

28   /

                                                    9

**C.      THE ALJ'S REJECTION OF THE TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ improperly rejected the opinion of his treating physician, Dr. P. Swananda.  See Joint Stip. at 14-15.  The Court disagrees, and affirms the ALJ's opinion regarding this issue.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927;  Lester, 81 F.3d at 830.  As a general rule, more weight should be given to the opinion of a treating physician than to the opinions of doctors who do not treat the plaintiff.  Lester, 81 F.3d at 830; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").

"However, an ALJ need not give controlling weight to the opinion of a treating physician." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004).  "The treating physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359 F.3d at 1195 (quoting Magallanes, 881 F.2d at 751).  Where the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  When the treating physician's opinion is controverted by another medical source, the ALJ may reject it by setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record.  Smolen, 80 F.3d at 1285.

The record contains a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)," dated July 7, 2005. [AR at 275-77.] Although the physician's signature on the opinion is illegible, plaintiff contends it was filled out by Dr. P. Swananda from Dr. Mike's Walk-In Clinic. See Joint Stip. at 14-15.  In the Medical Opinion, Dr. Swananda indicated that plaintiff has the

1  following limitations:  she can stand for less than two hours a day, sit for less than two hours a
2  day, and can occasionally carry less than ten pounds.  [AR at 275.]  Dr. Swananda also indicated
3  that plaintiff needs to change positions after intervals of either sitting or standing, must walk
4  approximately every thirty minutes, and needs to lie down around four times per day.  [AR at 276.]
5  Dr. Swananda did not set forth any medical findings that support his assessment.

6      The record also contains a "Pulmonary Residual Functional Capacity Questionnaire" which
7  plaintiff claims was also completed by Dr. Swananda on July 7, 2005.  [AR at 278-81; Joint Stip.
8  at 15.]  According to the Pulmonary Questionnaire, plaintiff can walk a quarter of a block before
9  needing to rest, she can sit for 45 minutes continuously, and can stand for 20 minutes
10  continuously.  Out of an eight hour day, she can stand or walk for a less than two hours, and sit
11  for about two hours.  [AR at 280.]  The Questionnaire reflects that plaintiff would need to take
12  about four unscheduled breaks each day, during which she would need to sit for approximately
13  half an hour before returning to work.  [Id.]

14      There is also a "Diabetes Mellitus Residual Functional Capacity Questionnaire" dated July
15  7, 2005, that plaintiff claims was prepared by Dr. Swananda.  [AR at 284-88; Joint Stip. at 15.]
16  According to the Diabetes Questionnaire, plaintiff "often" experiences symptoms associated with
17  diabetes that interfere with her attention and concentration.  [AR at 285.]  She has a severe
18  limitation with regard to dealing with stress, can sit for one hour continuously, and stand for 45
19  minutes continuously.  She can stand or walk for less than two hours total in a workday, and sit
20  for around two hours.  Plaintiff needs a job that permits shifting at will from sitting, standing, or
21  walking, she must walk every thirty minutes, and she needs to take around four unscheduled
22  breaks per day and rest for approximately thirty minutes before she returns to work.  [AR at 286.]
23  Dr. Swananda indicated that when sitting for prolonged periods, plaintiff's legs need to be elevated
24  at thirty degrees.  [AR at 287.]

25      The ALJ reviewed the above opinions, and rejected them on the basis that no clinical
26  findings or test results supported the assessed limitations, and that the expression of disability was
27  conclusory.  The Court finds that the ALJ's reasons were sufficiently specific and legitimate to
28  withstand remand.

11

1    First, as the ALJ noted, the clinical notes from Dr. Mike's Walk-In Clinic, where Dr.

2    Swananda treated plaintiff, do not support the opinions of disability.  [AR at 16, 251-70.]  There

3    are no objective tests or clinical findings by Dr. Swananda or other medical sources that reflect

4    the need for such severe restrictions.  Moreover, although the Pulmonary Questionnaire stated

5    that plaintiff has chronic obstructive pulmonary disease, the ALJ correctly noted that there is no

6    objective medical evidence supporting this diagnosis.  Similarly, while Dr. Swananda stated that

7    plaintiff was severely limited regarding her ability to handle stress, there are no clinical findings

8    that support this opinion.

9    The ALJ also determined that Dr. Swananda's opinions, each consisting of check-off

10   reports, were too conclusory to be highly probative.  Because Dr. Swananda did not elaborate on,

11   or otherwise explain, how plaintiff's impairments resulted in the functional limitations set forth on

12   the forms, the ALJ's rejection on this basis was not improper.  See Magallanes, 881 F.2d at 751;

13   Johnson, 60 F.3d at 1432 (the ALJ need not accept a treating physician's opinion which is

14   "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981

15   F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating

16   physician if the opinion is unsupported by clinical findings); Crane v. Shalala, 76 F.3d 251, 253

17   (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that

18   did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d

19   499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off

20   reports).[7]

21   As shown, specific and legitimate reasons based on substantial evidence in the record

22   support the ALJ's rejection of Dr. Swananda's opinion.

23

24

25

---

26   [7]    The Court further notes that, while Dr. Swananda prepared the three opinions on the same
date, they reflect conflicting limitations.  For example, in the Diabetes Questionnaire, Dr.

27   Swananda  indicated that plaintiff is able to sit for one hour continuously, and stand for 45 minutes
continuously. [AR at 286.]  In the Pulmonary Questionnaire, Dr. Swananda indicated that plaintiff

28   can sit for 45 minutes continuously, and stand for 20 minutes continuously.  [AR at 280.]

## VI.

## REMAND IS APPROPRIATE

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to evaluate whether plaintiff's mental RFC precludes her from working at jobs that have GED reasoning levels of 2 and 3.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED: January 31, 2007                                    _____
                                                                            /S/
                                                          PAUL L. ABRAMS
                                                          UNITED STATES MAGISTRATE JUDGE